FILED IN MY OFFICE
DISTRICT COURT CLERK
9/17/2015 12:01:49 PM
James A. Noel
Kristina Archibeque

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

**KIMBERLY SILVA**, as personal representative of
the estate of DANIEL J. SILVA, deceased,

    Plaintiff,

v.                                  No. D-202-CV-2015-07292

**ATA SERVICES, INC.,**

    Defendant.

## COMPLAINT FOR BREACH OF CONTRACT
## AND FOR PAYMENTS OF COMMISSION OWED

Plaintiff Kimberly Silva, through her attorneys Freedman Boyd Hollander Goldberg Urias & Ward P.A., bring this action against the Defendant, ATA Services, Inc., on behalf of the estate of Daniel J. Silva, deceased, for payment of commissions due and owing and for underpayment of commissions, and alleges as follows:

## I.
## THE NATURE OF THIS ACTION

1.    This is an action in contract. Plaintiff seeks to recover damages on behalf of the estate of Daniel J. Silva for commissions due to Mr. Silva on revenues obtained by Defendant ATA Services, Inc. (herein, "ATA Services" or "ATA") subsequent to the termination of Mr. Silva's employment, and for underpayment of Mr. Silva's commissions during the term of his employment with Defendant.

2.    Mr. Silva was employed by ATA Services as the manager of its New Mexico operations from September 27, 2005 until ATA terminated his employment on or about October 22, 2013. During the term of Mr. Silva's employment with Defendant, commissions due and payable to Mr. Silva were governed by a contract between the parties. This contract provided

# Exhibit A

that Mr. Silva was entitled to commissions in the form of a percentage of profits achieved by ATA on New Mexico contracts that were obtained by Mr. Silva during the term of his employment with ATA. To the extent that those contracts continued to perform and generate profits to ATA Services subsequent to Mr. Silva's employment, the estate of Mr. Silva is entitled to the commissions specified in his employment contract. Finally, ATA engaged in erroneous bookkeeping and accounting that resulted in Mr. Silva receiving less base salary and commissions than he was entitled to pursuant to his employment contract.

## II.
## THE PARTIES

3. Plaintiff Kimberly Silva is a resident of New Mexico and of Bernalillo County. Ms. Silva is the personal representative of the estate of her late husband, Daniel J. Silva. The beneficiaries of Mr. Silva's estate include his children, Thomas Silva (fifteen years old), Gracie Silva (12 years old) and Nicholas Silva (12 years old).

4. Defendant ATA Services, Inc. is a Colorado corporation with a principal place of business in Lakewood, Colorado. ATA is in the business of providing temporary workers to governmental and non-governmental entities to supplement those entities' work forces for as long as those entities project the need for such supplementary workforce. Throughout all time periods relevant to this action, ATA Services did substantial business in the State of New Mexico, entering into contracts with agencies of the State, county and local governmental entities and private New Mexico employers, and ATA continues to do business in the State of New Mexico. ATA has maintained offices at various locations within Bernalillo County, New Mexico. Currently, ATA's New Mexico office is at 1512 Wyoming Ave, N.E., Suite D, Albuquerque, N.M. 87112.

## III.
## JURISDICTION AND VENUE

5. This Court has jurisdiction over Defendant, ATA Services, Inc. Over a substantial number of years ATA solicited, advertised for and initiated business transactions within the State of New Mexico, and it continues to do so. It executed and performed contracts within the State of New Mexico over a substantial and sustained period of time and continues to do so. It entered into contracts with New Mexico entities, which contracts were performed and are being performed within the State of New Mexico, and thus ATA has availed itself of the benefits and privileges of New Mexico law.

6. Venue in this District is proper. Plaintiff Kimberly Silva is a resident of Bernalillo County and of this District. Defendant ATA Services has performed and is performing contracts within Bernalillo County and this District and maintains an office to conduct business in Bernalillo County and this District.

## IV.
## FACTUAL BACKGROUND

**Mr. Silva's Employment with Defendant**

7. On about September 27, 2005, decedent Daniel J. Silva began his employment with Defendant, ATA Services, Inc. as Branch Manager of ATA's New Mexico branch. Mr. Silva's primary responsibility was to generate interest by New Mexico governmental and private entities in ATA's services and to secure contracts under which ATA would provide workers to such entities. Additional responsibilities included supervising the New Mexico operations and managing the New Mexico office and its employees.

8. Prior to hiring Mr. Silva, ATA Services had a few contracts in New Mexico, exclusively with federal government agencies. These contracts were administered from ATA's

3

Colorado office.  Mr. Silva's primary responsibility was to secure contracts from New Mexico state entities and from local government entities in New Mexico and to supervise the implementation and performance of those contracts by ATA Services.

9. Subsequent to the commencement of his employment and at all times that he was employed by ATA Services, Mr. Silva devoted his efforts exclusively to supervising and growing ATA's business in New Mexico. In that regard, Mr. Silva was successful in obtaining numerous lucrative contracts under which ATA provided labor services to agencies of the state and local governments and to private institutions and quasi-governmental agencies in New Mexico.

10. In addition to obtaining these contracts, Mr. Silva supervised their implementation and the provision of labor services under those contracts. This included supervising the recruiting, vetting and training of the individual workers who were placed with entities contracting with ATA for labor services, and monitoring their performance. As a result of Mr. Silva's efforts, many of those contracts were renewed or extended and stayed in effect for a number of years and some of them are still being performed.  ATA has provided labor services under many of those contracts for an extended period of time, and on information and belief continues to provide services under some of those contracts.

11. Pursuant to a contract between the ATA and Mr. Silva, as modified during the course of his employment, Mr. Silva's compensation included certain commissions stated as a percentage of the profits that ATA Services earned on the New Mexico contracts obtained while Mr. Silva was employed by ATA Services or managed by Mr. Silva while he was employed by ATA.  Under the terms of those agreements, Mr. Silva was to be paid a commission based on the profits earned by those contracts for as long as those contracts continued to earn profits.

12. On or about October 22, 2013, ATA summarily terminated Silva's employment. At the time Silva was terminated, the contracts performed in New Mexico that were obtained for ATA by Silva were ongoing and were producing substantial revenues and profits for ATA and, upon information and belief, continue to do so.

## V.
## CAUSES OF ACTION

### COUNT I

**BREACH OF CONTRACT**
**Unpaid commissions due and owing**

13. Throughout the course of his employment with Defendant ATA Services, Mr. Silva's compensation was wholly or partially comprised of commissions on profits earned by ATA on contracts that Mr. Silva secured for ATA or that were administered by Mr. Silva in his role as ATA's employee and Branch Manager.

14. Pursuant to the contract between ATA and the decedent, Mr. Silva was to be paid commissions, calculated as a percentage of the gross profits earned by ATA Services on contracts that he secured or that were administered under his supervision, or from approximately April 1, 2009 through July, 2012, as a percentage of the net profits earned by ATA Services on such contracts, for as long as those contracts produced revenues and profits for ATA Services. Those commissions were paid to Silva on a periodic basis, bi-weekly, as the revenues from the ongoing contracts were received and the profits from those contracts were calculated and earned by ATA Services.

15. The rate at which that commission was calculated varied from time to time during the course of Mr. Silva's employment by ATA. Mr. Silva's compensation when he was hired was comprised of an annual salary plus a commission of ten percent (10%) of gross profits on

contracts he obtained for ATA Services. Within a year of his hiring, his commission rate was increased to twenty percent (20%) of gross profits. On July 1, 2009, Silva's commission rate was changed again to 35% of net profits. On July 1, 2013, Mr. Silva's commission rate was again changed to 23% of gross profits earned on established accounts and 40% of gross profits earned on new accounts or on existing accounts that were extended as a result of Silva's efforts.

16. On about July11, 2012, ATA Services notified Mr. Silva of a change in his employment responsibilities and compensation scheme. Pursuant to that change, Mr. Silva was relieved of certain administrative and supervisory responsibilities and was to devote his time primarily to the development and growth of ATA's client base within New Mexico. This was to include selling ATA's services to new customers, negotiating rates with clients, resolving customer service issues and maintaining a high level of customer satisfaction, following-up on customer payment delinquencies, submitting weekly activity reports and annual sales forecasts, and following up to insure that projections were met.

17. On about July 11, 2012, ATA notified Mr. Silva that as of July 1, 2013, his compensation would change. Under the changed compensation scheme, Mr. Silva would no longer receive a base pay, but instead his compensation would be entirely a commission on gross profits derived from contracts that he obtained and that were being performed under his supervision for as long as those contracts generated revenues and profits.  Pursuant to this change in Silva's compensation scheme, the rate of his commissions was to be increased as of and after July 1, 2013 to twenty-three percent (23%) of the gross profits earned on contracts with established accounts and forty percent (40%) of the gross profits earned on contracts with new or extended accounts.

18. Pursuant to the notification, after July 1, 2013, Mr. Silva's compensation was adjusted. He was no longer paid a salary and was paid commissions at the rate set forth in the notification.

19. At the time of the termination of Mr. Silva's employment by ATA Services on or about October 22, 2013, numerous of the contracts that Mr. Silva had obtained for his employer were in the process of being performed and were generating revenues and gross profits. On information and belief, many of those contracts have continued to generate revenues and gross profits even after the termination of Mr. Silva's employment.

20. Pursuant to the terms of the contract between Mr. Silva and ATA Services, Mr. Silva was entitled to commissions on those contracts that continued in performance after his termination at the rate of 23% of the gross profits earned by ATA Services on contracts under accounts that were established as of July 1, 2012 and 40% of the gross profits earned by ATA Services on contracts under new accounts established after July 1, 2012, or extended after that date, payable as those gross profits were incurred for as long as those accounts continue to perform and generate profits.

21. After termination of his employment, ATA Services paid none of these commissions to Mr. Silva.

## COUNT II

### BREACH OF CONTRACT
### Improper calculation of commissions and base pay

22. Plaintiff restates and realleges the allegations of paragraphs 1 through 21 as if set out fully herein.

23. During his employment at ATA, Mr. Silva's compensation was calculated as a percentage of the profits of the New Mexico operations of ATA, which Mr. Silva had been hired

to develop and supervise. Mr. Silva's commissions were stated as a percentage of gross profits, except that between approximately April, 2009 and July, 2012, Mr. Silva's commissions were stated as a percentage of net profits. The contract between ATA and Mr. Silva specified how "gross profits" were to be calculated, but did not specify how "net profits" were to be calculated. Although the percentage varied from time to time, at all times during his employment Mr. Silva's commission was expressed as a percentage of profits. During those periods of time during the course of his employment at ATA when Mr. Silva also was to be paid a base salary, that base salary also was calculated as a fixed percentage of the gross profits of the New Mexico operations of ATA.

24.  At various times throughout the course of his employment with Defendant, ATA would charge expenses to the New Mexico operations that were not properly assigned to the New Mexico office and were not within the definition of "gross profits" contained in the employment agreement; nor were such "expenses" properly charged against the contracts so as to determine "net profits." ATA did this with the intent and with the effect of reducing Mr. Silva's base pay and commission by artificially deflating the amount of the "profit" upon which Mr. Silva's base salary and commissions were determined and paid.

25.  As a result of the improper loading of expenses on the New Mexico operations of ATA, Mr. Silva's base salary and commissions were understated and Mr. Silva was underpaid during the course of his employment at ATA and those commissions continue to be understated subsequent to the termination of his employment, in amounts to be proven at trial.

# VI.
# PRAYER FOR RELIEF

26. The actions complained of herein constitute breaches by ATA Services of its contract with the decedent, Daniel J. Silva. The contract between ATA and Mr. Silva provided he would be compensated for his efforts on behalf of his employer by being paid a commission calculated as a percentage of the profits earned on contracts that he secured or supervised as those profits were earned by ATA Services for as long as those contracts generated revenues and gross profits. By failing to pay Mr. Silva commissions on those gross profits that were realized by ATA on those contracts after Silva's employment was terminated, ATA breached its contract with Mr. Silva. Finally, by charging as expenses to the New Mexico office, costs incurred by ATA that were not properly assignable to the New Mexico office or not properly included in the calculation of "gross profits" pursuant to the contract between ATA and Mr. Silva, ATA artificially and improperly deflated the amount of profits attributable to the New Mexico contracts, thus artificially and improperly reducing Mr. Silva's compensation both in the form of his salary and commissions.

WHEREFORE, Plaintiff Kimberly Silva prays that this Court:

a. Enter judgment in an amount to compensate the estate of Mr. Silva for the commissions that Mr. Silva should have been paid subsequent to the termination of his employment by ATA but that were not paid, according to proof at trial;

b. Enter judgment in an amount to compensate the estate of Mr. Silva for the base salary and commissions that were underpaid to Mr. Silva during the course of his employment as a result of improper bookkeeping and accounting by ATA in the calculation of profits of the New Mexico operations of ATA, according to proof at trial;

9

c. Order that ATA continue to pay commissions to the estate of Mr. Silva for the commissions owed to Mr. Silva as long as those contracts continue to perform and generate profits for ATA, and

d. Such other relief as the Court may deem appropriate.

Respectfully submitted,

**FREEDMAN BOYD HOLLANDER GOLDBERG URIAS &WARD P.A.**

*/s/ David H. Urias*
David H. Urias
Vincent J. Ward
Michael L. Goldberg
20 First Plaza, Suite 700
Albuquerque, NM 87102
(505) 842-9960
dhu@fbdlaw.com
vjw@fbdlaw.com

***Attorneys for Plaintiff***